1  Naomi A. Igra, SBN 269095                      Sabrineh Ardalan (*pro hac vice*)
   naomi.igra@sidley.com                          sardalan@law.harvard.edu
2  S. Patrick Kelly, SBN 275031                   Sameer Ahmed, SBN 319609
   patrick.kelly@sidley.com                       sahmed@law.harvard.edu
3  SIDLEY AUSTIN LLP                              Zachary Albun (*pro hac vice*)
   555 California Street, Suite 2000              zalbun@law.harvard.edu
4  San Francisco, CA 94104                        Deborah Anker (*pro hac vice* forthcoming)
   Telephone: +1 415 772 1200                     danker@law.harvard.edu
5  Facsimile: +1 415 772 7400                     Nancy Kelly (*pro hac vice* forthcoming)
   Facsimile: +1 415 772 7400                     nkelly@law.harvard.edu
6                                                 John Willshire Carrera (*pro hac vice* forthcoming)
   Douglas A. Axel, SBN 173814                    jwillshire@law.harvard.edu
7  daxel@sidley.com                               HARVARD LAW SCHOOL
   SIDLEY AUSTIN LLP                              HARVARD IMMIGRATION AND REFUGEE
8  555 West Fifth Street                          CLINICAL PROGRAM
   Los Angeles, CA 90013                          6 Everett Street, WCC 3103
9  Telephone: +1 213 896 6000                     Cambridge, MA 02138
   Facsimile: +1 213 896 6600                     Telephone: +1 617 384 7504
10                                                Facsimile: +1 617 495 8595

   *Attorneys for Plaintiffs*
11 *Additional Counsel on next page*

12                        UNITED STATES DISTRICT COURT

13                       NORTHERN DISTRICT OF CALIFORNIA

14                                  SAN FRANCISCO

15 | PANGEA LEGAL SERVICES et al., | Case No. 20-cv-09253-JD |
|---|---|
16 | Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
17 | v. | |
18 | U.S. DEPARTMENT OF HOMELAND SECURITY et al., | Assigned to Hon. James Donato |
19 | | Date: January 7, 2021 |
20 | Defendants. | Time: 10:00 a.m.<br>Courtroom 11, 19th Floor |

| | |
|---|---|
| Ben Schwarz (*pro hac vice*) | Jamie Crook, SBN 245757 |
| bschwarz@sidley.com | crookjamie@uchastings.edu |
| SIDLEY AUSTIN LLP | Annie Daher, SBN 294266 |
| 60 State Street, 36th Floor | daherannie@uchastings.edu |
| Boston, MA 02109 | Blaine Bookey, SBN 267596 |
| Telephone: +1 617 223 0300 | bookeybl@uchastings.edu |
| Facsimile: +1 617 223 0301 | Karen Musalo, SBN 106882 |
| | musalok@uchastings.edu |
| Brian C. Earl (*pro hac vice*) | CENTER FOR GENDER & REFUGEE |
| bearl@sidley.com | STUDIES |
| SIDLEY AUSTIN LLP | UC HASTINGS COLLEGE OF THE LAW |
| 787 Seventh Avenue | 200 McAllister Street |
| New York, NY 10019 | San Francisco, CA 94102 |
| Telephone: +1 212 839 5300 | Telephone: +1 415 565 4877 |
| Facsimile: +1 212 839 5599 | Facsimile: +1 415 581 8824 |

# **TABLE OF CONTENTS**

**PAGE(S)**

I.  Plaintiffs Are Likely to Succeed on the Merits of their APA Claims ................................... 1

    A.  Chad Wolf Lacked Authority to Propose and Issue the Rule ..................................... 1

    B.  The Rule Unlawfully Eviscerates the Availability of Asylum Protection .................. 2

    C.  Core Provisions Illustrate that the Rule Is Unlawful ................................................... 3

        1.  Defendants' Expansion of the Firm Resettlement Bar Is Unlawful ............... 3

        2.  The Rule's Imposition of Purported "Discretionary Factors" Is Unlawful ..... 5

        3.  The Rule's Pretermission Provision Is Unlawful ............................................ 6

        4.  The Rule's Redefinition of Frivolousness Is Unlawful .................................. 7

    D.  Defendants Failed to Satisfy Basic Procedural Requirements ..................................... 8

II.  Plaintiffs Have Established Irreparable Harm and that the Equities Tip in their Favor .......... 9

III.  The Scope of Relief Plaintiffs Request Is Warranted ............................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abdille v. Ashcroft*,
    242 F.3d 477 (3d Cir. 2001) ............................................................................................... 4

*Al Otro Lado, Inc. v. McAleenan*,
    394 F.Supp.3d 1168 (S.D. Cal. 2019) ................................................................................ 2

*Am. Baptist Churches v. Thornburgh*,
    760 F. Supp. 796 (N.D. Cal. 1991) .................................................................................... 4

*Am. Fed'n of Labor v. Chertoff*,
    552 F. Supp. 2d 999 (N.D. Cal. 2007) ............................................................................... 9

*Batalla Vidal v. Wolf*,
    2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020) ................................................................... 1

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) ............................................................................................. 9

*Camposeco-Montejo v. Ashcroft*,
    384 F.3d 814 (9th Cir. 2004) ............................................................................................. 4

*De Pena-Paniagua v. Barr*,
    957 U.S. 88 (1st Cir. 2020) ................................................................................................ 8

*Delaye v. Agripac, Inc.*,
    39 F.3d 235 (9th Cir. 1994) ............................................................................................... 1

*Diaz-Reynoso v. Barr*,
    968 F.3d 1070 .................................................................................................................... 8

*E. Bay Sanctuary Covenant v. Barr*,
    964 F.3d 832 (9th Cir. 2020) ..................................................................................... *passim*

*E. Bay Sanctuary Covenant v. Trump*,
    932 F.3d 742 (9th Cir. 2018) ........................................................................................... 10

*E. Bay Sanctuary Covenant v. Trump*,
    950 F.3d 1242 (9th Cir. 2020) ..................................................................................... 9, 10

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) ...................................................................................................... 5

*Gresham v. Azar*,
    950 F.3d 93 (D.C. Cir. 2020) ............................................................................................ 6

*Gulla v. Gonzales*,
    498 F.3d 911 (9th Cir. 2007) ............................................................................................. 5

*Immigrant Legal Res. Ctr. v. Wolf*,
    2020 WL 5798269 (N.D. Cal. Sept. 29, 2020) ........................................................................ 10

*In re S-M-J-*,
    21 I. & N. Dec. 722 (BIA 1997) ............................................................................................... 7

*In re S-P-*,
    21 I. & N. Dec. 486 (BIA 1996) ............................................................................................... 5

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987) .................................................................................................................. 2

*Judulang v. Holder*,
    565 U.S. 42 (2011) .................................................................................................................... 4

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) .............................................................................................................. 4

*Masihi v. Holder*,
    519 F. App'x 963 (9th Cir. 2013) ............................................................................................. 4

*Matter of A-B-*,
    27 I. & N. Dec. 316 (A.G. 2020) .............................................................................................. 8

*Matter of Pula*,
    19 I. & N. Dec. 467 (1987) ............................................................................................. 3, 5, 6

*Matter of Thomas*,
    21 I. & N. Dec. 20 (BIA 1995) ................................................................................................. 6

*Michigan v. EPA*,
    576 U.S. 743 (2015) .................................................................................................................. 2

*National Cable & Telecommunications Association v. Brand X Internet Services*,
    545 U.S. 967 (2005) ............................................................................................................. 4, 5

*Padilla v. Kentucky*,
    559 U.S. 356 (2010) .................................................................................................................. 7

*Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*,
    2020 WL 6802474 (N.D. Cal. Nov. 19, 2020) .................................................................. 3, 10

*Pereira v. Sessions*,
    138 S. Ct. 2105 (2018) .............................................................................................................. 4

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) .................................................................................................................. 2

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
    415 F.3d 1078, 1101 (9th Cir. 2005) ........................................................................................ 9

*Sierra Club v. Fed. Energy Regul. Comm'n*,
    867 F.3d 1357 (D.C. Cir. 2017) .............................................................................................. 10

*Sung Kil Jang v. Lynch,*
    812 F.3d 1187 (9th Cir. 2015) ........................................................................................ 4

*Tilija v. Att'y Gen. U.S.,*
    930 F.3d 165 (3d Cir. 2019) ............................................................................................. 7

*U.S. Citrus Sci. Council v. U.S. Dep't of Agric.,*
    312 F. Supp. 3d 884 (E.D. Cal. 2018) ............................................................................. 9

**FEDERAL STATUTES**

5 U.S.C. § 601(4) ....................................................................................................................... 9

5 U.S.C. § 601 (6) ...................................................................................................................... 9

5 U.S.C. § 3346(a)(2) ................................................................................................................. 2

8 U.S.C. § 1158(b)(1)(B)(ii) ...................................................................................................... 7

8 U.S.C. § 1158(b)(2)(A)(vi) ..................................................................................................... 4

8 U.S.C. § 1158(b)(2)(C) ........................................................................................................... 2

8 U.S.C. § 1158(d)(5)(B) ........................................................................................................... 2

8 U.S.C. § 1229a ........................................................................................................................ 7

8 U.S.C. § 1229a(a)(1) ............................................................................................................... 6

8 U.S.C. § 1229a(b)(1) ........................................................................................................... 6, 7

8 U.S.C. § 1229a(c)(4) ............................................................................................................... 6

**REGULATIONS**

85 Fed. Reg. 75925-75941 (Nov. 27, 2020) .............................................................................. 7

85 Fed. Reg. 80274-80401 (Dec. 11, 2020) ....................................................................... *passim*

85 Fed. Reg. 81588-81656 (Dec. 16, 2020) .............................................................................. 7

iv
PLS.' MOTION FOR PI, TRO & OSC, CASE NO. 3:20-cv-09253-JD

Defendants' Opposition only exposes the irrationality and inconsistency of the government's positions. Defendants' untenable arguments confirm the Court should enjoin the Rule nationwide.

## I. Plaintiffs Are Likely to Succeed on the Merits of their APA Claims

### A. Chad Wolf Lacked Authority to Propose and Issue the Rule

Defendants' claim that Wolf validly issued the Rule defies the GAO, federal courts, two statutes, and the Appointments Clause of the United States Constitution. Mot. 3, 5, ECF No. 27. It should now be settled that McAleenan was not next in line to succeed former Secretary Nielsen.[1] In fact, Defendants just voluntarily dismissed their appeal of a decision in this district reaching precisely that conclusion. *Immigrant Legal Res. Ctr. v. Wolf*, No. 20-17339 (9th Cir. Dec. 28, 2020), ECF No. 9.[2]

Defendants' alternative arguments all fail. As a preliminary matter, Defendants' concession that "Gaynor never became Acting Secretary," Opp. 12, ECF No. 48, is enough to end the inquiry. *Batalla Vidal v. Wolf*, 2020 WL 6695076, at *9 (E.D.N.Y. Nov. 14, 2020) ("DHS cannot recognize [Gaynor's] authority only for the sham purpose of abdicating his authority to DHS's preferred choice . . . ."). Also, Defendants cannot be correct that "Gaynor became Acting Secretary by operation of law when Wolf's nomination was submitted to the Senate," on September 10, 2020, Opp. 13, because as they concede, "the relevant vacancy under § 3349(a)(1) is the one created by Ms. Nielsen's resignation" on April 9, 2019, *id.* 12. Gaynor was not entitled to fill the vacancy when DHS notified Congress of that vacancy; Chris Krebs was. Mot 5. Nor could Gaynor fill any vacancy when Wolf was nominated because that occurred more than 210 days after Nielsen resigned. *Id.* 5-6. As Defendants acknowledge, the 210-day time limit "does not restart with each new acting officer." Opp. 13. Under the FVRA, a nomination tolls the period of service for one already serving as acting

---

[1] Plaintiffs presented this issue along with supporting evidence and citations to authority that settle the matter, Mot. 3, 5; Igra Dec. Exs. 19, 22 (ECF No. 27-6), along with ample allegations in the complaint, Comp. ¶¶ 308, 318, 320 n.44, ECF No. 1. Plaintiffs' debunking of the Rule's alternative justifications for Wolf's unlawful actions is hardly a waiver of the claim that those actions were unlawful from the start for the very reasons stated in the decisions and portions of the Rule that Plaintiffs cited. *See Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994) (distinguishing the "focus[]" of an argument from whether an "issue [was] raised").

[2] Defendants also voluntarily dismissed the appeal in *Northwest Immigrant Rights Project v, USCIS*, No. 20-5369 (D.C. Cir. Dec. 28, 2020), ECF No. 1877381.

secretary; it does not create a new vacancy or authorize anyone to *begin* serving as Acting Secretary more than 210 days after the initial vacancy. *See* 5 U.S.C. § 3346(a)(2). For these and other reasons, Mot. 5-6, the Court should enjoin the Rule based on Wolf's lack of lawful authority.

### B.    The Rule Unlawfully Eviscerates the Availability of Asylum Protection

Defendants incorrectly assert that the Rule merely "fills such gaps" left by Congress. Opp. 13. Plaintiffs and *amici* have shown how the Rule as a whole eviscerates the asylum system contrary to the purpose of the Refugee Act.[3] Not one of the Rule's numerous changes protects refugees. Mot. 2. Instead, the Rule reverses longstanding precedent established to carry out the Refugee Act's "primary purpose" of bringing U.S. law into compliance with international standards to prevent *refoulement*. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 436–37 (1987); Mot. 2, 6-7. Defendants submitted *no evidence* that the Rule's impact is any less sweeping than Plaintiffs established and commenters and *amici* explained.[4]

Defendants' primary argument is that their general rulemaking authority suffices to justify the Rule. Opp. 13-14. That is wrong. Defendants cannot rely on general rulemaking authority where more specific provisions apply. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[T]he specific governs the general" and that is "particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.") (citations and internal quotation marks omitted). Defendants' rulemaking must be consistent with the specific statutory scheme that applies to asylum.[5] And in all events, congressional authorization to issue rules "appropriate and necessary" to carry out a statutory scheme requires an agency to consider the "centrally relevant factor[s]" it has previously recognized. *Michigan v. EPA*, 576 U.S. 743, 753 (2015). Agencies must "pay[] attention to the advantages *and* the disadvantages" of their rules, *id.*, which is precisely what Defendants failed to do here. Mot. 8. Defendants have not

---

[3] *See* Mot. 6-9; Br. of Am. Cur. Former Immigr. Judges ("Former IJ Amicus") 2, 7-8, ECF No. 41; Br. of Am. Cur. Immigr. Law Professors("Prof. Amicus") 2-3, 10-11, ECF No. 39-1; Br. of Am. Cur. Att'ys Gen. ("AG Amicus") 1, ECF No. 33-1; Br. of Am. Cur. Local Gov'ts ("City Amicus") 1, ECF No. 47-1.
[4] Mot. 7; Igra Dec. Exs 4-11, 20-21, 23-27, 29; Pangea Dec. ¶¶ 11-61, ECF No. 27-2; DSCS Dec. ¶¶ 9-89, ECF No. 27-3; CLINIC Dec. ¶¶ 21-79, ECF No. 27-4; CAIR Dec. ¶¶ 11-58, ECF No. 27-5.
[5] *See, e.g., E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 849 (9th Cir. 2020) ("*EBSC III*") (addressing 8 U.S.C. § 1158(b)(2)(C), (d)(5)(B)); *Al Otro Lado, Inc. v. McAleenan*, 394 F.Supp.3d 1168, 1209-11 (S.D. Cal. 2019) (DHS cannot use § 1103 where Congress spoke more specifically).

shown that they reasonably assessed the Rule's impact in light of the statute's humanitarian purpose.

Defendants assert without evidence that CAT protection and withholding of removal are sufficient to prevent *refoulement*. Opp. 14. That assertion disregards Ninth Circuit precedent explaining why those forms of protection are not substitutes for asylum. *See EBSC III*, 964 F.3d 849. It also confirms Defendants did not seriously consider substantial harms, such as family separation, if those now eligible for asylum can only obtain limited protection through CAT or withholding of removal. Mot. 8; Igra Dec. Ex. 4 at 9-10; DSCS Dec. ¶ 82. In any event, the Rule's pretermission provisions would apply even to applicants seeking withholding of removal or CAT protection. 85 Fed. Reg. 80306.

Defendants' other arguments do not withstand scrutiny. They cite the need for efficiency and clarity in administering immigration law, Opp. 15, 18, 23-24, yet the Rule overturns *Matter of Pula*, 19 I. & N. Dec. 467 (1987), which has long provided a clear and efficient presumption that favors asylum seekers. Mot. 11; Igra Dec. Ex. 4 at 50-51, Ex. 6 at 13. Defendants cannot credibly claim they looked for efficient ways to effect the statute's purpose; they only looked for ways to efficiently deny asylum to as many people as possible. *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 2020 WL 6802474, at *16 (N.D. Cal. Nov. 19, 2020) ("*Pangea I*") ("The Departments' reasoning that certain parts of the Rule will foster adjudicative efficiency rings hollow when compared against other parts of the Rule, such as those described here, that seemingly strip away bright line standards.").

Finally, Plaintiffs identified multiple policy changes the Rule fails to adequately explain. *Cf.* Opp. 14. The Rule rejects so much precedent that Plaintiffs could not fit a discussion of all the changes in a 20-page motion. Mot. 9. But Plaintiffs and commenters identified many such changes that Defendants ignores, Mot. 6-14 (citing to Plaintiffs' Declarations and Igra Dec. Exhibits), just as they ignored serious problems identified in thousands of comments to the Rule.

### C.   Core Provisions Illustrate that the Rule Is Unlawful

#### 1.   Defendants' Expansion of the Firm Resettlement Bar Is Unlawful.

Plaintiffs' Motion explained how Defendants' expansion of the firm resettlement bar conflicts with plain statutory language and is unjustified. Mot. 9-10. Defendants' response is

unavailing. Defendants cannot rely on *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 982 (2005), to expand the bar, *cf.* Opp. 15, because *Chevron* deference applies only if a statute is "genuinely ambiguous" and the agency's interpretation is "reasonable." *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415-16 (2019).[6] Here, the plain statutory language unambiguously precludes a finding of "firm[] resettle[ment]" based on non-permanent or contingent ability to remain in a country. *See* 8 U.S.C. § 1158(b)(2)(A)(vi); Merriam-Webster Dictionary, Definition of "Firm," https://tinyurl.com/yy9fl6b6 ("securely or solidly fixed in place . . . not subject to change or revision."). "Firm resettlement" plainly requires permanence in order to ensure a noncitizen's continued safety, as the Ninth Circuit has consistently affirmed. *See EBSC III*, 964 F.3d 847 (requiring a determination as to "whether an [asylum seeker] has truly been firmly resettled" given the need to safeguard refugees against forced return to harm or persecution).[7] Even if the term were ambiguous, Defendants' new interpretation is arbitrary and capricious because it is not based on reliable evidence or reasoned decision making. Mot. 10.

The cases Defendants rely on contradict their own arguments. In *Sung Kil Jang v. Lynch*, Opp. 15, the Ninth Circuit affirmed that the relevant analysis turns on the existence of "an offer of some type of *permanent* resident status . . . with the ability to enjoy a variety of rights and privileges in another country." 812 F.3d 1187, 1191 (9th Cir. 2015) (emphasis added). And *Abdille v. Ashcroft*, an out-of-circuit case incorrectly identified as a Ninth Circuit case, Opp. 15, likewise holds that an offer of facially-temporary status is insufficient to trigger firm resettlement absent a showing the noncitizen was in fact offered permanent status. *See* 242 F.3d 477, 488-89 (3d Cir. 2001).

Defendants also invoke "foreign policy" as a basis for expanding the firm resettlement bar. Opp. 16. But it is well-settled that under the Refugee Act, "foreign policy . . . considerations are not relevant to the determination of whether an applicant for asylum has a well-founded fear of persecution." *Am. Baptist Churches v. Thornburgh*, 760 F. Supp. 796, 799 (N.D. Cal. 1991).

---

[6] *See also Pereira v. Sessions*, 138 S. Ct. 2105, 2120-21 (2018) (Kennedy, J., concurring) (critiquing "reflexive deference" to Board interpretations of the INA); *Judulang v. Holder*, 565 U.S. 42, 64 (2011) (reversing Board's interpretation "unmoored from the purposes [] of the immigration laws.").

[7] *Camposeco-Montejo v. Ashcroft*, 384 F.3d 814, 819-20 (9th Cir. 2004) (an offer of temporary residence does not compel a finding of firm resettlement); *see also Masihi v. Holder*, 519 F. App'x 963, 964 (9th Cir. 2013) (possession of renewable visa and work permit in third country insufficient to establish firm resettlement).

1  (stipulation by DOJ and legacy INS).[8]

2  Finally, Defendants do not offer a reasonable explanation for the Rule's *sub silentio* elimination of regulatory exceptions to the firm resettlement bar. *See* Mot. 10; *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) ("An '[u]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" (quoting *Brand X*, 545 U.S. 981)). Defendants cite a circuit split that does not even involve the relevant regulatory exceptions, Opp. 15, while "ignore[ing] the judicial consensus on permanence and stability." Prof. Amicus 10.

**2.   The Rule's Imposition of Purported "Discretionary Factors" Is Unlawful.**

Defendants' primary defense of the Rule's "discretionary factors" is an unsupported denial that they function as *de facto* bars. Opp. 16. The text of the Rule negates this defense: if any of the nine factors are present, the adjudicator "*will not* favorably exercise discretion" unless there are "extraordinary circumstances" (akin to "national security or foreign policy considerations") or there is clear and convincing evidence that denying asylum would result in "exceptional and extremely unusual hardship." 85 Fed. Reg. 80387-88, 80396-97 (emphasis added). It would be an exceedingly rare asylum case that could meet this standard. *See* Prof. Amicus 2. If these "discretionary factors" are not the practical equivalent of categorical bars, as Defendants claim here, there is no efficiency benefit to justify them.

Defendants' attempts to justify other factors are also flawed. For example, Defendants assert that applicants who transit through more than one country or spend more than 14 days in a single country have no urgent need for protection. Opp. 17; 85 Fed. Reg. 80351. But Defendants' own precedent recognizes legitimate reasons why applicants with meritorious claims may not apply for protection in the first country they reach; none of those reasons reflect the urgency of the claim. *See Matter of Pula*, 19 I. & N. Dec. at 473–74 (discussing safety of third country and personal ties to the United States); *see also Gulla v. Gonzales*, 498 F.3d 911, 918 (9th Cir. 2007) (reversing denial of asylum based on discretionary third-country transit considerations as an abuse of discretion where

---

[8] *See also In re S-P-*, 21 I. & N. Dec. 486, 492-93 (BIA 1996) ("[A] grant of political asylum is a benefit to an individual under asylum law, not a judgment against the country in question . . . . This distinction between the goals of refugee law . . . . and politics . . . should not be confused.").

1 applicant had family in the United States and would have faced ethnic and religious hostility in
2 countries he transited through *en route* here). Defendants ignored comments challenging their
3 "urgency" justification, *see, e.g.*, Igra Dec. Ex. 4 at 29; Ex. 13 at 29, just as they ignored precedent
4 recognizing that dangerous conditions in Mexico and Guatemala explain why those with meritorious
5 claims may not apply for protection there. *EBSC III*, 964 F.3d 853.

6     Defendants' arguments as to other "discretionary factors" fare no better. For example,
7 Defendants refuse to acknowledge how the Rule's provisions on motions to reopen or filing an
8 application after one year conflict with the statute. Mot. 11. They assert that these new factors are a
9 permissible extension of the one-year filing deadline for initial applications, even though they would
10 swallow the possibility of asylum for applicants Congress specifically excluded from that deadline.
11 *See Gresham v. Azar*, 950 F.3d 93, 230 (D.C. Cir. 2020) (noting that agencies are "bound, not only
12 by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and
13 prescribed, for the pursuit of those purposes" (internal quotation marks omitted)).

14     Similarly, Defendants offer no reasoned response to Plaintiffs' showing that the breadth of
15 the "adverse discretionary factor" bar based on criminal convictions is contrary to law, as another
16 Court in this District concluded when it enjoined another rule. Mot. 11 (citing *Pangea I*). Defendants
17 attempt to rely on *Matter of Thomas*, 21 I. & N. Dec. 20, 23–24 (BIA 1995), but that decision
18 addresses the discretion analysis for voluntary departure; it does not rebut the issues Plaintiffs raised.

19     None of Defendants' justifications for the purported "discretionary factors" withstand
20 scrutiny. Because Defendants have failed to evaluate the risk that these factors will operate as *de*
21 *facto* bars for the majority of asylum applicants, or provide a reasoned basis for superseding the
22 Board's longstanding precedent in *Matter of Pula*, these provisions are all arbitrary and capricious.

23     **3.    The Rule's Pretermission Provision Is Unlawful.**

24     Defendants' assertion that the INA "does [not] require an evidentiary hearing when the claim
25 is legally deficient," Opp. 19, cannot be squared with the plain language of 8 U.S.C. § 1229a(a)(1).
26 *See* Mot. 12.[9] Defendants cite no authority allowing an immigration judge ("IJ") to short-circuit

---

[9] Defendants' argument that the INA "does not define the nature of 'proceedings'" ignores the statutory directives that give meaning to the term in 8 U.S.C. §§ 1229a(b)(1), (c)(4).

proceedings under 8 U.S.C. § 1229a without providing an applicant the opportunity to testify. *See* Opp. 18 (improperly relying on *Tilija v. Att'y Gen. U.S.*, 930 F.3d 165, 171 (3d Cir. 2019) (remand warranted for *second* asylum hearing due to previously unavailable evidence)).[10]

Defendants' position also flies in the face of well-settled law guaranteeing due process in immigration proceedings.[11] IJs must listen to testimony and elicit facts to determine whether an asylum seeker meets the statutory refugee definition. *See* Former IJ Amicus 2-6; Comp. ¶¶ 156-57; *see also In re S-M-J-*, 21 I. & N. Dec. 722, 723 (BIA 1997) ("[A] cooperative approach in Immigration Court is particularly important."). In fact, Defendants just cited IJs' affirmative duty to develop the record in a recently published final rule on appellate procedure. *See* 85 Fed. Reg. 81588, 81597 ("[I]mmigration judges have a duty to develop the record in cases involving *pro se* [non-citizens][.]"); *id.* at 81607 ("*Throughout the course of proceedings*, individuals may raise evidentiary or factfinding issues *as the record is developed* . . . . Circuit courts have held that under . . . 8 U.S.C. § 1229a(b)(1), immigration judges have an *obligation to develop the record*.") (emphasis added).[12] Defendants' discussion of this unreasoned regulatory change in isolation, without considering its impact in combination with other rules, renders the Rule arbitrary and capricious. *See* Mot. 14.

**4.    The Rule's Redefinition of Frivolousness Is Unlawful.**

The Opposition confirms that the Rule's redefinition of "frivolous" is unreasoned, impermissibly vague, and arbitrary and capricious. Defendants still have not defined the phrase "clearly foreclosed by law"—this is unsurprising given the constant changes in asylum jurisprudence. *Compare* Mot. 15 (identifying vagueness of "clearly foreclosed by law") *with* Opp. 20-21 (failing to define the term); *cf. Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) ("Immigration

---

[10] Defendants invoke an objective evidence requirement purportedly set forth in *Tilija*, yet the INA makes clear that the testimony of an asylum seeker alone may carry her burden without corroboration where her testimony "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii).

[11] Mot. 13; Former IJ Amicus, 2-6 (addressing the importance of this Constitutional guarantee especially for *pro se* asylum seekers); Br. Am. Cur. Kids in Need of Def., Young Ctr. for Immigrant Children's Rights, & Pub. Counsel ("KIND Amicus") 7-9, ECF No. 50 (explaining why pretermission violates due process and the TVPRA in its application to unaccompanied children).

[12] Defendants' alleged "ten-day [written] response period" is meaningless for *pro se* applicants and children. *See* Former IJ Amicus 6; KIND Amicus 9-10. And Defendants have recently indicated they will disfavor extensions or continuances of proceedings going forward. *See* 85 Fed. Reg. 75925, 75938 (Nov. 27, 2020).

1  law can be complex, and it is a legal specialty of its own."). Indeed, Defendants once considered
2  claims for asylum that are today uncontroversial—such as those involving persecution based on
3  sexual orientation or victims of female genital cutting—as foreclosed by law. *See* Former IJ Amicus
4  8, 11-12. And 40 years after passage of the Refugee Act, circuit courts continue to reverse the Board
5  for *erroneously* finding claims foreclosed by precedent.[13] Here, Defendants offer no guidance on
6  how to distinguish between an argument that "extend[s], modif[ies], or reverse[s] existing
7  precedent" and one that is "foreclosed by law." *See* Former IJ Amicus 9; Igra Dec. Ex. 13 at 33. Nor
8  do they weigh the serious risk that even an asylum seeker who is represented could be forever barred
9  from receiving immigration benefits if her attorney is unfamiliar with the latest developments in this
10 complex area of law. Igra Dec. Ex. 26 at 12-13.

11       Defendants' arguments also undermine their stated interest in promoting "efficiency." Opp.
12 24. Holding hearings to determine asylum applicants' subjective knowledge of U.S. immigration law
13 will only make proceedings less efficient. To determine the scope of an applicant's knowledge of
14 relevant asylum law at the time of filing, an adjudicator will have to elicit testimony from the asylum
15 seeker, who may be *pro se*, a child, severely traumatized, or face a language barrier. *Cf.* Opp. 20-21.
16 In any event, "efficiency" that undermines due process and the Refugee Act's humanitarian purpose
17 is not a valid justification. *See* Prof. Amicus 4-12.

18     **D.**    **Defendants Failed to Satisfy Basic Procedural Requirements.**

19       Defendants do not have an adequate response to Plaintiffs' showing that the rulemaking
20 process was plagued with problems and provided insufficient time to comment. *See, e.g.,* Mot. 16-
21 17; Igra Dec. Ex. 4 at 7-9; Ex. 5 at 2; CLINIC Dec. ¶ 22 (describing insufficient time to analyze
22 interplay with other rules); CAIR Dec. ¶ 12 (describing insufficient time to address significant
23 reliance interests). Defendants contend Plaintiffs suffered no harm from the staggered rulemaking
24 because they could raise their concerns in comments for the 15-Day Rule. Opp. 22; *see also* 85 Fed.
25 Reg. 80372. But Plaintiffs were denied a meaningful opportunity to comment on *this* Rule because

---

[13] *See, e.g.*, *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1088 n.5 (9th Cir. 2020) (reversing the Board for erroneously ruling that asylum claims by women in particular social groups defined in part by an "inability to leave a relationship" were categorically foreclosed by *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2020)); *De Pena-Paniagua v. Barr*, 957 U.S. 88, 94 (1st Cir. 2020) (same).

they could not assess its full impact when combined with rules Defendants issued separately. CLINIC Dec. ¶ 22; *California v. Azar*, 911 F.3d 558, 580 (9th Cir. 2018) (opportunities to comment on other rules do not constitute a meaningful opportunity to comment on the rule at issue).

Defendants also misapprehend Plaintiffs' arguments that Defendants failed to conduct the requisite analysis to determine that this constitutes a major rule. *Compare* Mot. 17 *with* Opp. 22. Only serious irregularities could have led to Defendants' decision to issue the Rule with a 30-day effective date. In particular, Defendants completely ignored a letter submitted by the Attorneys General of 22 states describing the economic impact well over the $100 million threshold for a major rule that Defendants were required to consider. Mot. 17.

Defendants' response as to the RFA is also untenable.[14] Plaintiffs are all "small entities" under the RFA because they are "not-for-profit enterprise[s] which [are] independently owned and operated and [are] not dominant in [their] field." 5 U.S.C. §§ 601(4), (6). Pangea Dec. ¶¶ 3-6; DSCS Dec. ¶¶ 3-8; CLINIC Dec. ¶¶ 3-7; CAIR Dec. ¶¶ 3-10. Plaintiffs are also "adversely affected" and "aggrieved" by the Rule. Mot. 18-20 (citing declarations). Defendants' failure to analyze the Rule's impact on entities like Plaintiffs violates the RFA.[15]

## II. Plaintiffs Have Established Irreparable Harm and that the Equities Tip in their Favor.

Plaintiffs' harms are sufficient to establish standing. *Cf.* Opp. 3 n.1.[16] Defendants do not dispute Plaintiffs' evidence detailing how the Rule harms them or binding precedent holding that such evidence suffices. *EBSC III*, 964 F.3d 854. Indeed, similar injuries suffered by these very Plaintiffs have already been found sufficient by another court in this District, and the analysis on the

---

[14] Plaintiffs need not be "directly regulated by" the Rule to be within the zone-of-interest. Opp. 22. "[T]he Ninth Circuit [has] implicitly assumed that indirectly affected small entities had standing to challenge an agency decision under the RFA." *U.S. Citrus Sci. Council v. U.S. Dep't of Agric.*, 312 F. Supp. 3d 884, 912 (E.D. Cal. 2018) (citing *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1101 (9th Cir. 2005)).
[15] *See E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1270 (9th Cir. 2020) ("*EBSC II*") (organizations met "the Court's lenient APA [zone-of-interest] test" where their "purpose is to help individuals apply for and obtain asylum, provide low-cost immigration services, and carry out community education programs with respect to those services"); *Am. Fed'n of Labor v. Chertoff*, 552 F. Supp. 2d 999, 1013 (N.D. Cal. 2007) (finding "serious questions whether DHS violated the RFA"). Defendants' failure to conduct the analysis is particularly egregious given that EOIR formally recognizes Pro Bono Legal Service Providers under the statute. Mot. n.38.
[16] Notably, Defendants' argument for change or extension of law here is the sort of argument that could warrant a finding of frivolousness under the Rule.

balance of harms in that case is even more fitting here. *Pangea I*, 2020 WL 6802474, at **38-40. Moreover, *amici* have made clear that consideration of the public interest heavily favors an injunction here. AG Amicus 1-2; City Amicus 1-2; 10-13.

### III.     The Scope of Relief Plaintiffs Request Is Warranted

A nationwide injunction that blocks the entire rule is warranted. Mot. 20. "In immigration matters," the Ninth Circuit has "consistently recognized the authority of district courts to enjoin unlawful policies on a universal basis." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018). Moreover, Plaintiffs assert challenges to the validity of the entire rule and not just discrete provisions. In particular, Wolf's lack of authority to issue the Rule "impact[s] the validity of the Final Rule in its entirety." *Immigrant Legal Res. Ctr. v. Wolf*, 2020 WL 5798269, at *20 (N.D. Cal. Sept. 29, 2020).[17] "Other procedural and substantive violations of the APA," *id.*, including conflict with the Refugee Act, also pervade the entire Rule. *Id*. And "[s]ince the beginning of [the rulemaking]," Defendants have "treated the project as a single, integrated proposal," demonstrating that neither agency would have approved a fragmentary rule. *Sierra Club v. Fed. Energy Regul. Comm'n*, 867 F.3d 1357, 1366 (D.C. Cir. 2017); *see also* 85 Fed. Reg. 80285–86 (the Rule's purpose is to "harmonize" the asylum system).

Plaintiffs have shown that nationwide relief is necessary to prevent harm to them. *See, e.g.*, Mot. 20 n.56; CLINIC Dec. ¶¶ 27-34. Defendants have not rebutted that showing. They only suggest that the Court should not enjoin the Rule's credible fear provisions because the INA "channels" certain challenges to the District of Columbia. Opp. 25 (citing 8 U.S.C. § 1252(e)(3)). Although Plaintiffs do not specifically challenge the credible fear provisions, Defendants' APA violations warrant setting aside the Rule in its entirety. *EBSC II*, 950 F.3d 1269-70 (holding that section 1252(e) did not bar a broad APA challenge that did not directly implicate the credible fear process); *id.* 1284 ("jurisdiction-stripping provisions . . . were not intended to apply at all to challenges to asylum eligibility rules").

---

[17] Defendant Barr's signature does not save the Rule because "the DHS and DOJ regulations are inextricably intertwined." 85 Fed. Reg. 80286.

| | |
|---|---|
| | Respectfully submitted, |
| DATE: January 5, 2021 | By:*/s/ Naomi A. Igra* |
| Sabrineh Ardalan (*pro hac vice*) | Naomi A. Igra, SBN 269095 |
| sardalan@law.harvard.edu | naomi.igra@sidley.com |
| Sameer Ahmed, SBN 319609 | S. Patrick Kelly, SBN 275031 |
| sahmed@law.harvard.edu | patrick.kelly@sidley.com |
| Zachary Albun (*pro hac vice*) | SIDLEY AUSTIN LLP |
| zalbun@law.harvard.edu | 555 California Street, Suite 2000 |
| Deborah Anker (*pro hac vice* forthcoming) | San Francisco, CA 94104 |
| danker@law.harvard.edu | Telephone:  +1 415 772 1200 |
| Nancy Kelly (*pro hac vice* forthcoming) | Facsimile:  +1 415 772 7400 |
| nkelly@law.harvard.edu | |
| John Willshire Carrera (*pro hac vice* forthcoming) | Douglas A. Axel, SBN 173814 |
| | daxel@sidley.com |
| jwillshire@law.harvard.edu | SIDLEY AUSTIN LLP |
| HARVARD LAW SCHOOL | 555 West Fifth Street |
| HARVARD IMMIGRATION AND REFUGEE CLINICAL PROGRAM | Los Angeles, CA 90013 |
| | Telephone:  +1 213 896 6000 |
| 6 Everett Street, WCC 3103 | Facsimile:  +1 213 896 6600 |
| Cambridge, MA 02138 | |
| Telephone:  +1 617 384 7504 | Ben Schwarz (*pro hac vice*) |
| Facsimile:  +1 617 495 8595 | bschwarz@sidley.com |
| | SIDLEY AUSTIN LLP |
| Jamie Crook, SBN 245757 | 60 State Street, 36th Floor |
| crookjamie@uchastings.edu | Boston, MA 02109 |
| Annie Daher, SBN 294266 | Telephone:  +1 617 223 0300 |
| daherannie@uchastings.edu | Facsimile:  +1 617 223 0301 |
| Blaine Bookey, SBN 267596 | |
| bookeybl@uchastings.edu | Brian C. Earl  (*pro hac vice*) |
| Karen Musalo, SBN 106882 | bearl@sidley.com |
| musalok@uchastings.edu | SIDLEY AUSTIN LLP |
| CENTER FOR GENDER & REFUGEE STUDIES | 787 Seventh Avenue |
| | New York, NY 10019 |
| UC HASTINGS COLLEGE OF THE LAW | Telephone:  +1 212 839 5300 |
| 200 McAllister Street | Facsimile:  +1 212 839 5599 |
| San Francisco, CA 94102 | |
| Telephone: +1 415 565 4877 | *Attorneys for Plaintiffs* |
| Facsimile: +1 415 581 8824 | |